**FILED**

**MAY 21 2015**



UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>ARCHIE ROBERTS,<br><br>  Defendant. | 5:14-CR-50123-JLV<br><br>REPORT AND RECOMMENDATION |

Pending is Defendant Archie Roberts' Motion to Suppress Evidence (Doc. 26). A hearing was held on April 14, 2015. Roberts was personally present and represented by his attorney of record, Stephen D. Demik. The Government was represented by Eric D. Kelderman. Two witnesses testified at the hearing. Nine exhibits were received into evidence. Both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## **JURISDICTION**

Defendant is charged in an Indictment with Possession of an Unregistered Firearm in violation of 26 U.S.C. §§ 5861(d), 5841 and 5871. The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Honorable Jeffrey L. Viken's Standing Order dated March 9, 2015.

## FACTUAL BACKGROUND

The court makes the following findings of fact based on the testimony and evidence summarized below.

At approximately 6:39 p.m. on December 16, 2014, a 911 call was placed to the dispatch in Lead, South Dakota. The call was known as an open call, meaning that dispatch could not get the caller to respond. The call was traced to 512 West Addie Street in the City of Lead. Officer Randal McGruder, responded to the call and parked his vehicle on West Addie Street. Officer McGruder came across a young boy walking in the street. The boy was looking for his mother. As he walked with the young boy, he observed a vehicle involved in a fresh accident. The young boy pointed out his residence, which Officer McGruder and the boy walked toward.
Exhibit 2 depicts the location of the residence at 512 West Addie Street. The residence is located at the bottom of a flight of steps from the street level. When Officer McGruder arrived at the front door of the residence, he knocked on the door, which went unanswered. The young boy informed Officer McGruder that that "nobody's here, except me, I think." (Exhibit A at 3:12). The boy stated that his step-father went looking for his mom. (Exhibit A at 3:16). The young boy opened the front screen door and Officer McGruder observed an infant lying in a car seat which was placed just inside the door.

The young boy informed Officer McGruder that his mom and stepdad (Roberts) had a fight. Shortly thereafter, dispatch relayed to Officer McGruder that there had been a report of domestic violence. During the conversation

between Officer McGruder and dispatch, the young boy interjected saying the following about the location of Roberts: "I saw him run down there on the other side of the building." When dispatch advised that the suspect has weapons inside the residence, the boy interjected by replying, "Yes. There's a couple of guns in there." (Exhibit A at 6:35). The boy entered the house and pointed out one of the weapons to Officer McGruder. Officer McGruder stood in the entry way/front porch of the residence at this time. Dispatch advised Officer McGruder to use caution because there was a previous confrontation where violence occurred at the residence. Officer McGruder requested backup, because he believed that the situation was dangerous given the unknown location Roberts. The boy again told Office McGruder that he saw Roberts run down the street. (Exhibit A at 7:09).

Shortly thereafter, the victim (Tara) and her friend arrived at the residence. When Tara asked her son where Roberts was, the boy said that he "ran down there and . . . jumped over that fence." (Exhibit A at 8:10). Tara informed Officer McGruder that Roberts put a gun in Tara's mouth, choked her while going down the stairs, and threatened to kill her. Tara entered the home and Officer McGruder followed (1st search) Tara into the home. Officer McGruder did not ask for her consent to enter the home. Officer McGruder inquired as to the location of the gun which Roberts placed in Tara's mouth. The friend then pointed out a gun (pistol) on the couch. The friend asked Officer McGruder if he had taken the gun out of the couch.

Officer McGruder took possession of the pistol and asked Tara if it was the only gun Roberts owned. The boy stated that Roberts had an "AK." Tara went into the bedroom and located an assault rifle. Officer McGruder followed Tara to the bedroom and asked for her permission to take possession of the assault rifle and the pistol.[1] Tara expressed concern about getting them back, but she consented to Officer McGruder taking the weapons.

Tara, the two children, the friend, and Officer McGruder left the residence and walked up the flight of stairs to West Addie Street. They were met by Tara's father and Officer Larvie, who arrived as backup. Tara and her children left with Tara's father. Officer McGruder did not ask for Tara's consent to re-enter the home, nor was there any discussion of Officer McGruder's intention to re-enter the home.

Officer McGruder relayed a summary of the incident to Officer Larvie, including that "I got the guns; I've got them confiscated" and that he was not aware of any more pistols. (Exhibit A at 15:09; 16:45). Office McGruder told Office Larvie that the last time anyone saw Roberts he was running and jumped the fence, and that "[Roberts is] on foot someplace in the neighborhood." (Exhibit A at 17:17; 16:01). Officer McGruder further stated, "Victim's gone; the kids are gone; they took off with a friend, so they should be safe." (Exhibit A at 17:40) Officer McGruder testified that while he was on the street and prior to the second entry into the home, he had time to secure a warrant.

---

[1] Neither the pistol or the assault rifle are the weapons which make the basis for the charge in the Indictment, nor are they the subject of the Motion to Suppress.

Officer McGruder and Officer Larvie went back to the residence and re-entered the home (2nd search). It is undisputed that they did not have a warrant and that they did not have express consent from Tara to re-enter the home. Officer McGruder testified that they re-entered the home in an effort to locate and arrest Roberts pursuant to South Dakota's mandatory domestic violence arrest law, SDCL § 25-10-36. Officer McGruder walked into the home, through the living room and went to a closet located in the corner of the house. He opened a closet door an observed 8-9 shotguns, some of which are the subject of this Indictment. While Officer McGruder was looking through the closet containing the shotguns, Tara returned to the residence and asked, "What are you doing?" Officer McGruder informed Tara that he was confiscating the guns. Tara's body language and tone of voice conveyed to Office McGruder that she didn't want him there. Officer McGruder seized the weapons, including the weapons that are the subject of the Indictment.

## DISCUSSION

### Burden of Proof

The Fourth Amendment prohibits unreasonable searches and seizures. Maryland v. Buie, 494 U.S. 325, 331 (1990). In determining the reasonableness of a search, courts are to balance "the intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Id. A search of a home without a warrant supported by probable cause is usually unreasonable. Id. "[N]o zone of privacy is more clearly defined than a person's home: '[T]he Fourth Amendment has drawn a

firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.'" United States v. Conner, 127 F.3d 663, 666 (8th Cir. 1997)(quoting Payton v. New York, 445 U.S. 573, 590 (1980)).

### A. Exigent Circumstances

"The [exigent circumstances] exception justifies immediate police action without obtaining a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed." Amburn, 412 F.3d at 915 (quoting United States v. Ball, 90 F.3d 260, 263 (8th Cir. 1996)). Whether this exception to the warrant requirement has been shown is evaluated objectively, on the basis of what a "reasonable, experienced officer would believe." Id. (quoting United States v. Kuenstler, 325 F.3d 1015, 1021 (8th Cir. 2003)). An officer's subjective motivations are irrelevant. United States v. Valencia, No. 06-3501, * 4 (8th Cir. August 23, 2007) (citing Brigham City v. Stuart, 126 S. Ct. 1943, 1948 (2006)). The exception is "narrowly drawn" and "applies even when . . . probable cause for the [search or arrest] clearly exists." United States v. Ball, 90 F.3d 260, 263 (8th Cir. 1996).

The government bears the burden to demonstrate that exigent circumstances exist which justify the warrantless search. United States v. Ramirez, 676 F.3d 755 (8th Cir. 2012). The government argues that officer safety and/or the safety of others amounted to exigent circumstances.

At the time Officer McGruder arrived on scene, the domestic violence incident had already occurred. The information provided to Officer McGruder

by the young boy was that both the victim and the suspect had left the residence. Officer McGruder believed that he had removed all of the weapons from the home. There was no evidence that the suspect remained in the house, that his escape was imminent, or that evidence was about to be destroyed.

This is particularly true when viewed in the context of the second search, whereby Officer McGruder had ensured that the victim and her children had left the residence and there was time to get a warrant. Officer McGruder's stated reason to re-enter the home was to arrest Roberts and because he was concerned that Tara would return to the home. These facts do not constitute circumstances which would cause a reasonable, experienced officer to have a legitimate concern for officer safety or the safety of other potential victims.

This Court has previously recognized "there is no *per se* domestic violence exception to the warrant requirement of the Fourth Amendment. The fact domestic violence occurred does not, in and of itself, create exigent circumstances. There must be something more[.]" United States v. Ladeaux, 2012 WL 1609913 at *3 (D.S.D. May 8, 2012). No additional facts are present in this case which create exigent circumstances.

The government also argues that an exigency may exist when there is a compelling need for official action and there is no time to secure a warrant. (Docket 31 at p. 5)(citing Radloff v. City of Oelwein, 380 F.3d 344, 348 (8th Cir. 2004). This argument is rejected, given Officer McGruder's admission that he

had time to secure a warrant before the re-entry of the residence (2nd search), which produced the illegal firearms.

**B. Consent**

A recognized exception to the search warrant requirement is consent. United States v. Goldenstein, 456 F.2d 1006, 1009 (8th Cir. 1972). "Consent to search . . . may be given either by the suspect or by some other person who has common authority over, or sufficient relationship to, the item to be searched. Common authority is a function of mutual use, joint access, and control, and is a question of fact." United States v. James, 353 F.3d 606, 613 (8th Cir. 2003) (internal citations omitted). The police may search a person's home without a warrant if that person gives voluntary consent. United States v. Mendoza, 677 F.3d 822, 829 (8th Cir. 2012).

Additionally, "The standard for measuring the scope of a [person's] under the Fourth Amendment is that of 'objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Fagnan v. City of Lino Lakes, Minn., 745 F.3d 318, 323 (8th Cir. 2009). A consent to search is valid if the "totality of the circumstances demonstrates that the consent was voluntary." United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990). The Government must prove consent by a preponderance of the evidence. Id. Courts are also to consider "whether the defendant's contemporaneous reaction to the search was consistent with consent." Id.

The government asserts that Tara allowed Officer McGruder into the home and consented to his retrieval of the pistol and assault rifle. The government argues that these actions amount to implied and express consent which was not revoked, thus justifying the re-entry of the home and the second search. (Docket 31, p. 6).

Assuming without deciding, that the government could meet its burden of proof that Officer McGruder obtained Tara's implied consent for the first search, the real issue before the court is whether Officer McGruder had new consent for the second search. The Eighth Circuit analyzed second entry cases in United States v. McMullin, 576 F.3d 810 (8th Cir. 2009). In McMullin, law enforcement obtained consent to enter a home where they believed a fugitive was located. 576 F.3d at 812. The fugitive fled the home and was arrested in the backyard. Id. Law enforcement brought the fugitive back into the home for questioning. Id. at 813. While inside the home during the second entry, law enforcement observed weapons incriminating McMullin. McMullin moved to suppress, arguing that the second entry required new consent. The government argued that McMullin's initial consent continued to the second entry because McMullin never effectively withdrew the consent. Id. at 815. After surveying other Eighth Circuit second entry cases, the McMullin court concluded that "the proper procedure here should have been to secure a search warrant prior to the second entry" and that the second warrantless entry without consent or exigent circumstances violated the Fourth Amendment. Id. at 816.

It is undisputed that Officer McGruder did not obtain Tara's express or implied consent for the second search. In fact, Tara was never given an opportunity to object to the second entry, because Officer McGruder did not convey to Tara his intentions to re-enter the home. At the time Officer McGruder re-entered the home, Tara and her children had left with Tara's father. Tara's later discovery of Officer McGruder in the home and response of "What are you doing?" establishes that her contemporaneous reaction to the search was inconsistent with consent.

The government had failed to meet its burden to show that Officer McGruder had consent for the second entry into the home.

### C. Protective Sweep

A protective sweep is only appropriate where officers enter a dwelling to make an arrest believe, based on specific and articulable facts, that the residence harbors an individual who could be dangerous. See United States v. Garcia-Delacruz No. 07-2285, *5 (8th Cir. Feb. 8, 2008) Buie, 494 U.S. at 327, 334; Chimel v. California, 395 U.S. 752, 762-763 (1969); United States v. Varner, 481 F.3d 569, 572 (8th Cir. 2007). Here, the audio recording establishes that Roberts had fled the residence. While this information was relayed to Officer McGruder by a young boy, there was no additional information to contradict this belief. In fact, Officer McGruder didn't express concern that Roberts was in the home, but instead told Officer Larvie that Roberts had fled and was somewhere in the neighborhood.

Given the lack of consent to re-enter the home and the lack of exigent circumstances, Officer McGruder likewise did not have authority to conduct a protective sweep during the second search.

## CONCLUSION

The court respectfully recommends that defendant Archie Robert's motion to suppress (Docket 26) be granted.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

DATED this 21st day of May, 2015.

BY THE COURT:

/s/ Daneta Wollmann
DANETA WOLLMANN
United States Magistrate Judge